UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STRUCTURAL METALS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-984-XR |
| | § | |
| S&C ELECTRIC COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

**ORDER ON ATTORNEYS' FEES**

On this date, the Court considered Plaintiff Structural Metals, Inc.'s Motion for Attorneys' Fees and Expenses (docket no. 153), S&C's Response in Opposition (docket no. 161), and the Reply (docket no. 164).

**I. Background**

Plaintiff Structural Metals, Inc. ("SMI") sued Defendant S&C Electric Company ("S&C") in state court for breach of contract, breach of express warranty in the sale of goods, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.  S&C removed the case to this Court on the basis of diversity jurisdiction.  This Court held a jury trial on Plaintiff's claims in November 2012.  The jury found that: (1) S&C and SMI agreed that S&C would provide an AVC system, (2) S&C did not fail to comply with the agreement, (3) S&C made and breached an express warranty to SMI, (4) S&C breached an implied warranty of merchantability, and (5) S&C breached an implied warranty of fitness for a particular purpose.  The jury also found that SMI did not justifiably revoke its acceptance of the AVC System, thereby precluding recovery on

1

SMI's breach-of-contract claim. The jury awarded $306,500 in breach-of-warranty damages. The Court entered judgment in favor of SMI based on the jury's verdict. SMI seeks an award of $793,696.12 in attorneys' fees and $11,509.37 in expenses.

## II. Analysis

An award of attorneys fees is governed by the same law that determines the substantive issues of the case. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Therefore, in this diversity case, Texas law controls both the award of and the reasonableness of the fees awarded. *Id.* Texas allows a prevailing party to recover attorneys' fees "only if permitted by statute or by contract." *Med. City Dallas v. Carlisle Corp.*, 251 S.W.3d 55, 58 (Tex. 2008). Section 38.001 of the Texas Civil Practice and Remedies Code allows for recovery of attorneys' fees for breach-of-contract claims. TEX. CIV. PRAC. & REM. CODE § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."). The Texas Supreme Court has held that this provision applies to breach-of-express-warranty claims under the Uniform Commercial Code ("UCC"). *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 63 (Tex. 2008) (holding that an express warranty claim is contractual in nature such that attorneys' fees may be awarded under § 38.001(8)).[1] "Under Texas law, there is discretion to determine the amount of the attorneys' fee award, but an award of reasonable fees is mandatory if a party prevails . . . and there is proof of reasonable fees." *DP Solutions, Inc. v. Rollins, Inc*., 353 F.3d 421, 433 (5th Cir. 2003).

_____

[1] The First Court of Appeals has held that attorneys' fees are recoverable for breach of implied warranty of merchantability claims based in contract. *Howard Industr., Inc. v. Crown Cork & Seal Co.*, --- S.W.3d ---, 2013 WL 269137 at *5 (Tex. App.–Houston [1st Dist.] 2013, no pet.). The Texas Supreme Court has not addressed the recoverability of fees for implied warranty claims.

2

The computation of reasonable attorneys' fees involves a three-step process: (1) determine the nature and extent of the services provided by plaintiff's counsel; (2) set a value on those services according to the customary fee in the prevailing market and quality of the legal work; and (3) adjust the compensation on the basis of the other factors that may be of significance in the particular case. *See Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974); *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Steps one and two result in a computation of the "lodestar" amount. Both the hours worked and the hourly rate must be reasonable, and the Court considers only the hours spent on the successful claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). In the final step, the lodestar is adjusted on the basis of the other factors enumerated in *Johnson* and by the Texas Supreme Court in *Arthur Andersen & Co. v. Perry Equipment Co.*, 945 S.W.2d 812, 818 (Tex. 1997).[2] Rarely are all factors applicable, however, and a trial judge may give them different weights.

As noted, SMI pursued claims for breach of contract and breach of express and implied warranties, was successful on all of it warranty claims, and did not recover on its breach-of-contract claim under the UCC because the jury failed to find revocation of acceptance. For breach-of-warranty damages, the jury awarded $306,500, reflecting the difference, at the time and place of acceptance, between the value of the AVC system accepted and the value that the AVC system would have had if it had been as warranted.

---

[2] The Texas factors are virtually identical to those examined by federal courts in awarding attorneys' fees. The Fifth Circuit recently stated in an unpublished opinion that "[t]he issue remains open whether the twelve factors enumerated in *Johnson* apply in Texas diversity cases," citing *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000). *Maverick Industr., Inc. v. Am. Teleconferencing Servs., Ltd.*, No. 12-10102, 2013 WL 1799960 (5th Cir. April 30, 2013). However, the Fifth Circuit resolved this issue in *Mathis*, finding that state law controls both the award of and the reasonableness of fees where state law supplies the rule of decision. The Fifth Circuit has also held that the factors articulated *Johnson*, to the extent adopted by the Texas Supreme Court in *Arthur Andersen*, are relevant. *Quanta Servs. Inc. v. Am. Admin. Group Inc.*, 384 F. App'x 291, 298 (5th Cir. 2008).

In its motion for fees, SMI submitted an adjusted lodestar calculation of $793,696.12. SMI acknowledged that it did not prevail on its breach-of-contract claim, and removed time entries relating solely to its revocation of acceptance theory, totaling $7,011.20, plus an additional 2% deduction ($16,197.88) to account for time spent on that issue in other time entries, for a total reduction of $23,209.08. SMI contends that no further reduction is warranted because tasks performed were necessary for both the contract and warranty claims. SMI further reduced its fees by eliminating hours associated with S&C's motion for spoliation remedy, amounting to $19,384.40. Further, SMI notes that the lodestar amount of $793,696.12 reflects a blanket 20% reduction off each timekeeper's rate based on SMI's long-standing relationship with SMI's parent company, Commercial Metals Company.

S&C raises a number of challenges to SMI's fee request, including failure to plead and prove presentment, failure to segregate fees for unsuccessful claims, failure to remove fees related to removal and mediation, failure to remove fees for legal technology and trial media specialists, and failure to adjust the lodestar downward to reflect a more reasonable fee.

## A. Presentment

To recover attorney's fees under Chapter 38: (1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. TEX. CIV. PRAC. & REM. CODE § 38.002. S&C contends that SMI failed to satisfy Chapter 38 because it did not present a demand to trigger an entitlement to fees, any demands that it did present were excessive and therefore ineffective, and it did not plead presentment.

The presentment requirement of Chapter 38 "is to enable the debtor to pay the claim within

4

the thirty days and avoid liability for attorney's fees." *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 936 (Tex. 1983).  The "burden of proof is on the claimant to plead and prove presentment and failure to tender performance." *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 168 (Tex. App.–Houston [1st Dist.] 1996, no writ).  However, no particular form or manner of presentment is required; it may be written or oral, and all that is necessary is that an assertion of a debt or claim and a request for compliance be made to the opposing party, and that the party failed to pay the claim.  *Id.*  The statute is to be liberally construed to promote its underlying purpose, but the act of filing suit is not by itself a demand within the statute.  *Id.* Further, "[a] creditor who makes an excessive demand on a debtor is not entitled to attorney's fees for litigation required to recover the debt."  *Id.* (citing *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981)).

SMI's motion for attorney fees asserts that it presented the claim because there is undisputed evidence that SMI made a request for its money back, and S&C did not comply.  SMI points to evidence that in January 2008 Henry Camarillo informed S&C, through Mike Seehafer (who worked for S&C's sales agent Fred Oberlender & Associates[3]), that SMI wanted its money back.  Docket no. 152 Ex. B, Ex. C.  SMI argues that this oral request is alone sufficient to establish presentment.  *See Harrison v. Gemdrill Int'l, Inc.*, 981 S.W.2d 714, 719 (Tex. App.– Houston [1st Dist.] 1998, pet. denied) (plaintiff's statement that he wanted to collect his pay without fail held sufficient); *Criton Corp. v. Highlands Ins. Co.*, 809 S.W.2d 355, 358 (Tex. App.–Houston [14th Dist.] 1991, writ denied)  ("oral request for performance" held sufficient).

---

[3] S&C has admitted that Fred Oberlender and Associates was its authorized agent with respect to the sale of the AVC system.  Docket no. 90 at 10.

S&C argues that the evidence about Camarillo stating that SMI wanted its money back is not sufficient because Seehafer made the comment as part of a discussion about the fact that SMI was taking the position that S&C was responsible for all the damages resulting from the December 2006 fire, and "[t]hat email did not concern the AVC Warranty Claim." Docket no. 161 at 7. S&C notes that Camarillo did not participate in the email communication and the email did not indicate the amount of money that SMI was demanding to satisfy its claim. However, the fact that the email discussion submitted as evidence did not include Camarillo does not alter the fact that it is evidence that Camarillo informed S&C, through Seehafer, that SMI wanted its money back. No evidence suggests that Camarillo did not do so. SMI has therefore sufficiently proven that SMI asked for its money back.

SMI's request for its money back satisfies the purpose of the statute to give S&C an opportunity to pay the debt and avoid attorneys' fees. Presentment does not have to refer to a specific amount of damages or name a specific claim or cause of action, and does not have to be made by counsel. *Partners Lending Auto Group, LLC v. Leedom Fin. Servs.*, 432 F. App'x 291, 296 (5th Cir. 2011) ("The presentment also does not have to include an amount owed."); *Sunbeam Envtl. Servs. v. Tex. Workers' Comp. Ins. Fac.*, 71 S.W.3d 846, 851 (Tex. App.–Austin 2002, no pet.) ("there is no requirement that the demand must be made by counsel" and sending is a bill is sufficient presentment). *Cf. Standard Constructors, Inc. v. Chevron Chem. Co., Inc.*, 101 S.W.3d 619, 627 (Tex. App.–Houston [1st Dist.] 2003, pet. denied) ("A claimant is not required to make a presentment for the exact amount it is entitled to recover at trial.").

SMI also contends that its written offer of settlement is sufficient presentment. SMI sent a written settlement offer asking for $772,071.27 to release all pending claims on March 19, 2010,

6

which S&C rejected. S&C argues that the settlement demand is insufficient because it sought an excessive amount and was "not a presentment of the AVC Warranty Claim, for which the maximum SMI could recover would be $306,500, the price it paid to S&C." S&C asserts that, "[i]n short, SMI never made a demand on the AVC Warranty Claim."[4] S&C also argues that it is not liable for fees because SMI's demands were excessive.

However, a demand is not excessive simply because it is greater than that which a jury later determines is actually due, especially where the amount due is unliquidated. *Panizo*, 938 S.W.2d at 169 (settlement demand of $125,000 not excessive even though jury awarded only $1,000). Although the purchase price of the AVC units was liquidated, SMI was seeking damages for costs related to purchasing the AVC units and the other parts of what it characterized as the AVC System. In that regard, SMI asserted that it was entitled to recover its expenses related to the purchase of the other components of the "AVC System" and damages related to the failure of the system to function and the December 2006 fire. SMI was also seeking incidental and consequential damages at that time. *See* Second Am. Compl. (docket no. 28) at 8 (listing incidental and consequential damages for breach of contract and/or warranty in the amount of $465,571.27).[5]

---

[4] S&C also contends that SMI's demands during mediation were unreasonable and excessive because SMI sought close to $1 million and "[t]he AVC Warranty Claim could never have entitled SMI to $1 million." S&C asserts that, "when SMI indicated that it would not accept anything less than $1 million, SMI made it clear to S&C that it would not have accepted $306,500, thereby excusing S&C from tendering that amount." Docket no. 161 at 8. However, the question is whether SMI presented its claim in 2008 or 2010 such that S&C had an opportunity to pay within 30 days of that presentment. SMI's conduct during mediation in 2011 is not relevant to the inquiry. In addition, S&C never offered $306,500. *See Interstate Highway Constr., Inc. v. Laco Turf & Seeding, Inc.*, Civ. A. No. 07-05-200, 2006 WL994782, at *4 (Tex. App.–Amarillo 2006, no pet.) (noting that defendant claiming that amount was excessive never offered to pay amount actually due). And S&C has not shown that, had it tendered payment of the $306,500 purchase price in 2008 when SMI asked for its money back, it would have been refused. *See Denta Rama, Inc. v. Lavastone Industr. of Central Tex.*, 597 S.W.2d 507, 509 (Tex. Civ. App.–Dallas 1980, no writ) ("Testimony that appellee was insisting on payment of the entire amount is not equivalent to evidence that a tender of the correct amount due would have been refused.").

[5] The total amount of damages SMI sought for the contract or warranty claims was the same.

The dispositive inquiry for determining whether a demand is excessive is whether the claimant acted unreasonably or in bad faith. *Panizo*, 938 S.W.2d at 169. There is no evidence that SMI's demands were made in bad faith. *See Standard Constr. v. Chevron Chem.*, 101 S.W.3d 619, 627-28 (Tex. App.–Houston [1st Dist.] 2003, pet. denied) ("[W]e cannot conclude that Chevron's conduct in making its initial demand of $531,424 and subsequently proceeding to trial solely on its claim for $97,784 constituted bad faith as a matter of law.").

S&C also contends that SMI failed to plead presentment in its Complaint. As the Fifth Circuit noted in *Partners Lending*, it has "previously found that even though a party failed to cite Chapter 38 in its amended complaint, it may still recover fees under that statute if it clearly presented a claim for attorney's fees." *Id.* (citing *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1501 (5th Cir. 1992)). Further, SMI adequately pled presentment by invoking Chapter 38, by alleging that all conditions precedent to its right to recovery for breach of contract and/or breach of warranty have been performed, and by alleging that all necessary notices required as a predicate to SMI's recovery of attorney's fees had been given. *See Shin-Con Dev. Corp. v. I.P. Inv., Ltd.*, 270 S.W.3d 759, 768 (Tex. App.–Dallas 2006, pet. denied) ("[W]hen a claimant avers in its petition that all conditions precedent to recovery have occurred or have been performed, it is required to prove only those conditions precedent that have specifically been denied by the opposing party."). Therefore, the Court concludes that SMI complied with 38.001 and adequately pled presentment.

## B. Segregation of Fees between Successful and Unsuccessful Claims

S&C argues that SMI must reduce its fees for work spent on its unsuccessful "fire claim" and "system claim." S&C also contends that additional reductions are necessary for the spoliation and revocation issues.

8

1. "Fire Claim" and "System Claim" Fees

S&C argues that, rather than confining this case to a breach-of-warranty claim related to the two AVC units, SMI expanded the litigation by asserting that S&C designed and warranted an entire AVC System that included the transformers, building, and air conditioning units; caused the December 2006 fire that destroyed the system; breached a contract and various warranties related to the AVC system; and was liable for $772,071.27 instead of $306,500.

S&C contends that SMI transformed what could have been a simple case into an "an exaggerated and complicated one" that "S&C had no choice but to spend more than three years of contentious litigation disputing that its exposure was and could only be limited to the sale of the two AVC units." Docket no. 161 at 2. S&C argues that the jury "saw right through" SMI's arguments and concluded that S&C sold and warranted only the two AVC units and did not cause the fire. Therefore, S&C argues, the fee award should be reduced by amounts spent on the unsuccessful "fire claim" and "system claim." Because S&C admitted to selling the two AVC units and admitted that they experienced overheating and temperature issues, S&C argues that the only issue that needed to be litigated was whether those facts amounted to a breach of warranty and, if so, how SMI was damaged. Accordingly, S&C asserts, only legal work necessary to prosecute the limited "AVC Warranty Claim" is recoverable.

"[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313-14. This standard does not require more precise proof for attorney's fees than for any other

claims or expenses, and does not require separate time records for different claims. *Id.* at 314.

With regard to the "fire claim," S&C argues that all work relating to SMI's expert E.P. Hamilton and S&C's two experts, the causation section of S&C's first motion for summary judgment, and third party discovery relating to the insurance investigation, totaling $98,558.80, is not recoverable because SMI lost on this issue. In response, SMI notes that S&C argued that it was SMI's faulty installation of the cables that caused the fire, and that all of SMI's damages were a result of that fire as opposed to any problem with the AVC units. The parties disputed the cause of the fire and S&C's responsibility for the fire before and during the litigation, and the cause of the fire was directly relevant to SMI's claim for damages. The jury was instructed that, to award damages for breach of warranty, the damages had to be proximately caused by the breach. Docket no. 123. Had the jury accepted S&C's argument that the fire caused all of SMI's damages and that only SMI was responsible for the fire, it would not have awarded any damages for breach of warranty. Therefore, SMI did not lose on the issue of the cause of the fire, and litigation of that issue was necessary for SMI to recover its damages on its warranty claims.

S&C contends that fees expended in SMI's pursuit of its claim that S&C sold and warranted an "AVC System" that was greater than simply the two AVC units cannot be recovered. S&C asserts that there are several tasks and categories of fees that relate only to the "system claim" – discovery of the third parties who provided other parts of the system; SMI's two experts who opined about air conditioning (Goodwin and Grady); the breach-of-contract section of S&C's first motion for summary judgment; the motion for reconsideration on summary judgment entered for S&C; the third amendment of the complaint; all discovery relating to the third amended complaint; and S&C's second motion for summary judgment. S&C argues that those tasks, which amount to $103,348.40

of the claimed fees are not recoverable.

SMI argues that it asserted and won on its breach-of-warranty claims, and that segregation based on separate theories of the same cause of action is not required. *Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton*, 234 S.W.3d 814, 829 n.2 (Tex. App.–Dallas 2007, pet. denied); *Flagship Hotel, Ltd. v. City of Galveston*, 117 F.W.3d 552, 565 & n.6 (Tex. App.–Texarkana 2003, pet. denied) ("Courts examine segregation based on whether different causes of action have similar elements and arise out of the same set of circumstances. They do not examine whether the different theories of the same cause of action need to be segregated."). SMI argues that its claim was for breach of warranty, and the fact that it did not recover the full amount of damages it requested for that claim is not a basis for segregation. SMI further contends that it is not clear that the jury rejected SMI's argument that S&C sold and warranted the entire "AVC System" because the jury could have determined that, although S&C warranted the entire system, parts of the system retained some value, and thus the appropriate sum of damages should be the purchase price of the AVC units.

The Court agrees with SMI that it is entitled to fees with regard to legal services that advanced its breach of warranty claim, even if it did not achieve full success on that claim, such that segregation in this regard is not required. S&C's arguments are more properly evaluated under the reasonableness factors, specifically the degree of success obtained.

## 2. Spoliation and Revocation of Acceptance Fees

S&C contends that an additional $4,380 should be removed relating to the spoliation issue and an additional $2,740.80 relating to the revocation issue.

With regard to spoliation, S&C challenges 10.2 hours billed by Cano, 1 hour by Jefferson, and

11

1 hour by Graham.  S&C does not specify which specific entries it finds objectionable, other than citing to a monthly invoice, and the Court is unable to identify the entries or how they relate to spoliation without more information.  Therefore, the Court will not reduce fees beyond the 51.7 hours that SMI has already reduced them.[6]  With regard to the 1 hour billed by Graham, SMI contends that this time is recoverable because SMI opposed a bad faith instruction related to the loss of the cable, and the Court did not include the instruction.  The Court finds that Graham's time is recoverable.

With regard to the revocation of acceptance issue, S&C asserts that the fee should be reduced by 2.5 hours billed by Cano and 5.9 hours billed by Crozier.  SMI responds that Ms. Crozier researched issues related to contract formation that did not relate solely to SMI's revocation of acceptance theory.  The time entries (at A2-000152) reflect that Ms. Crozier researched issues of contract formation that supported both the recoverable warranty claim and the nonrecoverable contract claim (and did not relate solely to revocation), such that these fees are recoverable.

As to Ms. Cano's hours, SMI notes that S&C failed to specify which 2.5 hours of Ms. Cano's time it finds objectionable, and asserts that all of her billed time for that month is recoverable.  S&C cites only the bill for the month of November 2012, which included the trial of this case and has numerous entries.  Nevertheless, the Court has identified an entry for Ms. Cano on November 14 that includes an unspecified amount of time for "review and revise bench brief re: revocation of acceptance issues" and "attention to filing bench brief."  The total entry for November 14, a trial day, is for 18 hours.  S&C notes that SMI did not segregate its fees or bills (though it was not required to), and that it was necessary to estimate the amount of time spent on various tasks in some instances.

---

[6] SMI's Reply asserts that it reduced fees overall by 2% to address *both* the revocation and spoliation issues. Docket no. 164 at 16.  However, Jefferson's affidavit states only that the 2% reduction was attributed to revocation of acceptance.

However, the bench brief on revocation is only three pages long and was filed at 8:12 a.m. on November 14. Therefore the Court concludes that the 2.5 hour estimate is excessive. Moreover, SMI has already reduced its fees by 2% of the total request to ensure that all time related to the revocation issue was removed. The Court finds that this is sufficient, and no further reduction is warranted. *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (stating that an opinion regarding percent of time spent on nonrecoverable claim is sufficient for segregation).

## C. Costs of Mediation

S&C argues that the attorneys' fees related to mediation ($18,682) are not recoverable because S&C opposed the mediation and SMI took an unreasonable position at the mediation by refusing to accept anything less than $1 million to settle. SMI filed a motion for referral to mediation on July 21, 2011. S&C opposed, asserting that SMI was unwilling to settle for less than its entire demand, and arguing that mediation would not be fruitful. The Court denied the motion. However, the Court later reconsidered. On October 5, 2011, the Court noted that additional time was needed for complete briefing of pending motions before the scheduled pretrial conference, and ordered a continuance of the trial. In the interim, the parties were ordered to mediate no later than December 12, 2011. The Court ordered that "[t]he costs of mediation are to be divided and borne equally by the parties." Docket no. 57.

The parties do not cite any helpful case law discussing the availability of fees incurring during mediation, especially when mediation was opposed.[7] In this case, SMI sought mediation over S&C's opposition, and although the Court's order spoke only to the costs of mediation, its intent was that

---

[7] SMI cites one case in which fees were apparently awarded, but the decision contains no analysis or discussion of the issue. *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 809 (W.D. Tex. 2006).

each party would bear its own attorneys' fees associated with the mediation.  Accordingly, the Court does not award fees ($18,682) incurred in the mediation.

**D. Fees Associated with Removal**

S&C argues that SMI's fees associated with removal are not recoverable.  S&C argues that SMI initially filed suit in state court and fraudulently joined its parent company, Commercial Metals, and S&C's sales agent, Fred Oberlender & Associates, to destroy diversity jurisdiction.  S&C removed on the basis of diversity, asserting that Commercial Metals and Fred Oberlender were improperly joined.  After removal, S&C and Fred Oberlender filed a motion to dismiss Commercial Metals as a plaintiff and Fred Oberlender as a defendant.  SMI then filed an Amended Complaint that dropped Commercial Metals as a plaintiff and Fred Oberlender as a defendant, and filed a response to the motion so stating.  S&C argues that $4,391.20 in fees attributable to the removal, the motion to dismiss, and SMI's first amended complaint are not recoverable.

There is no indication that SMI joined its parent company or Fred Oberlender in bad faith or to preclude removal.  After removal, SMI did not file a motion to remand, but instead investigated its options and voluntarily amended its complaint to remove the non-diverse parties.  There is no basis for denying fees in relation to the removal.

**E. Administrative/Legal Technology Specialist Fees**

S&C argues that $63,962.80 in administrative fees relating to electronic discovery, database maintenance, computer loading, and trial graphics are not recoverable because these are not reasonably incurred attorneys' fees.

The term "attorney's fee" has historically included fees for paralegal services.  *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582 (2008).  Under Texas law, compensation for a paralegal or

14

legal assistant's work may be included in the award for attorneys' fees if the paralegal or legal assistant performed work that has traditionally been done by an attorney and the assistant is qualified through education, training, or work experience to perform substantive legal work. *Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 702 (Tex. App.–Dallas 1988, writ denied); *see also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical."). Therefore, "[w]hen obtaining payment for work done by paralegals or legal assistants, Texas courts have required [specific] information, such as: (1) [T]he qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012).

Jefferson's affidavit states that Haynes & Boone employed "highly skilled legal technology specialists who assist[ed] with document production." Docket no. 153-1 at 6. The team included: DiAnna Gaeta ($172-$180), Elsa Gil ($92), Randal Girouard ($236), Wanda Johnson ($92), Kathleen Miles ($172), Sandra Smith ($136-$144), and Shelley Watts ($180).[8] Jefferson states that, "[m]uch like traditional legal assistants, the individuals identified above performed substantive work under my direction related to electronic production in this matter, a critical component of modern discovery practices." *Id.* at 7. In addition, SMI's motion states that it seeks recovery for only those hours during which support staff performed substantive legal work. However, reviewing the time entries, it appears that much of this work was not of the type traditionally done by an attorney. Even

---

[8] In its objections, S&C also identifies time entries from Kenny Truong, and Lam Phan. There is no information regarding these individuals' job titles or qualifications.

assuming the work performed by these individuals was substantive legal work, however, SMI has

failed to demonstrate their qualifications by training or experience to perform such substantive legal

work. *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex.

App.–Texarkana 2005, no pet.) (excluding legal assistant fees where there was no evidence other than

the hourly rate and hours expended); *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex.App.–Fort

Worth 1997, pet. denied) (affirming trial court's exclusion of legal assistant fees where there was no

evidence as to the assistant's qualification through education, training, or work experience to perform

substantive legal work). Therefore, recovery of fees for work performed by these legal technology

specialists is not allowed.

S&C also contests SMI's recovery of costs for 52.9[9] hours of services performed by Michael

Brockwell in April 2012 and 133.4 hours[10] in November 2012. S&C argues that "the time for a

---

[9] This includes time entries for 3.90 hours for "create digital video deposition database; synchronize depositions of Seehafer, Suggs, Jones, Dyer, and Becker; create electronic exhibit database for use in trial"; 6.5 hours for "update digital video database with deposition of Sember; troubleshoot vendor issues regarding Sember deposition; review of trial exhibits"; 5.3 hours for "update digital video database with deposition of Tim Qualheim; review trial exhibits; review Plaintiff's Third Amended Complaint, Joint Pre-Trial Order and exhibit lists"; 6 hours for "review pleadings; review and refine digital exhibit databases; review and compile designations for use in excerpt creation"; 7.1 hours for "prepare digital video excerpts of designations for use in trial"; 5.3 hours for "prepare digital video excerpts for use in trial; review and refine digital exhibit databases"; .8 hours for "consult with trial team regarding multimedia equipment setup"; 1.2 hours for "consult with trial team regarding multimedia setup and trial logistics"; 6.4 hours for "create deposition excerpts of Mr. Seehafer, Mr. Suggs, and Mr. Qualheim; consult with trial team regarding trail logistics"; 8.4 hours for "create video excerpts of Mr. Sember and Mr. Becker; create digital exhibit database of trial exhibits"; 2 hours for "prepare multimedia equipment for use in trial; revise and refine digital trial exhibit database; create video excerpts of Mr. Jones."

[10] This includes time entries for 10 hours for "prepare multimedia equipment for trial; create video deposition excerpts for use in trial; refine digital exhibit database; consult with Ms. Cano regarding opening statements and trial strategy"; 8.9 hours for "setup multimedia equipment in courtroom; create video deposition excerpts for use in trial; refine digital exhibit database; graphic design of Opening Statements"; 7.7 hours for "review and refine video deposition excerpts; refine digital exhibit database; graphic design of Opening Statement; consult with trial team regarding trial strategy"; 8.1 hours for "consult with Ms. Cano regarding opening statements; refine digital exhibit database; prepare for examination of Mr. Camarillo; prepare for Voir Dire; refine digital video deposition excerpts for use in trial"; 13.6 hours for "trial; consult with trial team regarding trial strategy; prepare deposition of Mr. Sember for use in court"; 12.2 hours for "trial; consult with trial team regarding trial strategy; prepare videotape depositions for use in trial"; 16.4 hours for "trial; consult with trial team regarding trial strategy; prepare videotape depositions for use in trial"; 10 hours for "trial; consult with trial team regarding trial strategy"; 13.2 hours for "trial; consult with trial team regarding trial

person to assist with graphics at trial is not necessary to the litigation of the AVC Warranty Claim and should not be recovered." Jefferson states in his affidavit that Brockwell is a "trial services specialist with 16 years of experience in multimedia presentation and litigation consulting" and he bills at $176 per hour. SMI argues that it is more economical to use a media specialist as opposed to an attorney for these tasks. However, a review of the time entries indicates that much of Brockwell's work was not substantive legal work. Even if it was substantive legal work, SMI has not sufficiently demonstrated that he was qualified to perform substantive legal work. The Court will disallow the requested fees.

Accordingly, the Court will not award $63,962.80 in fees for work performed by SMI's technology and trial services specialists.

**F. Adjusted Lodestar**

<u>1. Hourly Rates</u>

To determine the adjusted lodestar amount, the Court must multiply the hours spent by counsel and legal assistants on the case by a reasonable hourly rate for the work performed. *El Apple*, 370 S.W.3d at 759. "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (quotations and citation omitted); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (the reasonable hourly rate is based on "the prevailing market rates in the relevant community"). Further, "the burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably

---

strategy"; 8.5 hours for "consult with trial team regarding trial strategy; prepare for following trial day"; 14.4 hours for "trial; consult with trail team regarding closing arguments; prepare closing arguments"; and 10.4 hours for "trial; closing arguments; strike multimedia equipment from courtroom and prepare for transit."

comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

Lamont Jefferson, a partner with almost thirty years of experience practicing as a litigator in San Antonio, billed at an hourly rate of $432 in 2009 and $452 from 2010 to 2013. Emma Cano, who graduated law school in 2002 and was at the time a senior associate, billed at an hourly rate of $344 in 2009 and $360 from 2010 to 2013. Polly Graham, who graduated law school in 2008 and is an appellate associate, billed at an hourly rate of $256 to $280. Phillip Philbin, a partner, provided "discrete case assessment services in this matter at a discounted hourly rate of $532." Rode Moore, a fourth or fifth year litigation associate, assisted with preliminary legal research at a discounted rate of $296. Brenna Nava, a third or fourth year litigation associate, also assisted with preliminary legal research at a discounted rate of $280. Christina Crozier, an appellate associate with over seven years experience, provided services related to the jury charge at a discounted rate of $312. Jefferson attests that their rates are within the range of usual and customary rates charged by other partners and associates with similar experience in large law firms in San Antonio for similar work.

S&C does not object to the requested hourly rates. The Court takes judicial notice of the State Bar of Texas, Department of Research & Analysis, 2011 Hourly Fact Sheet, which reflects median hourly rates by category. The Fact Sheet reflects that an attorney with Jefferson's experience charges a median hourly rate of $268, that the median rate for business litigation is $247 ($241 in San Antonio), and that the hourly rates for large firms are $392 to $418. Accordingly, the Court finds that the attorney rates are a bit higher than the prevailing market rates for San Antonio and would adjust the rates downward by 10%. However, Jefferson's hourly rates have already been discounted by 20%

such that no further adjustment is necessary.[11]  With regard to the other attorneys, the Court similarly finds that the hourly rates, already reduced by 20%, are reasonable.

With regard to litigation support staff, Theresa Grimmett ($160) is a paralegal with 23 years of litigation experience; Jennifer Villarreal ($144) is a paralegal with 12 years of experience; and Melissa Wilson ($60) is a legal assistant with 16 years of experience.  Jefferson states that the hourly rates charged for these individuals is within the range of usual and customary rates for legal support personnel at large law firms in San Antonio.  The Court takes judicial notice that the State Bar of Texas Legal Assistant Division has surveyed its membership, and the median hourly rate for a paralegal has been found to be $107.  District courts in Texas have held that paralegal hourly rates of $125 are reasonable.  *Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 709 (S.D. Tex. 2012) *Gromer v. Mack*, No. 3:11-CV-0682-D, 2012 U.S. Dist. LEXIS 847, at *3-5, 2012 WL 28835 (N.D. Tex. Jan. 4, 2012); *see also Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, Civ. A. No. H-11-3025, 2013 WL 487032, at *8 (S.D. Tex. Feb. 6, 2013) (finding a rate of $175 reasonable for a senior paralegal in Houston).  Therefore, the $60 rate for Wilson is reasonable.  Because the paralegal's hourly rates have already been reduced by 20%, the Court finds that no further reduction of Grimmett's or Villarreal's rate is warranted.

The Court therefore finds that the hourly attorney and paralegal rates are reasonable as billed.

2. Adjusted Lodestar

The Court has sustained S&C's objections to fees incurred in the mediation ($18,682) and fees

---

[11] As noted, Haynes & Boone gave SMI a blanket 20% reduction in fees.  When listing hourly rates, Jefferson's affidavit gives discounted hourly rates for Philbin, Moore, Nava, and Crozier.  It does not state that the hourly rates for Jefferson, Cano, or Graham are discounted.  Therefore, the Court has the understanding that the rates listed for these attorneys (and the paralegals) are not discounted.  If they are discounted, SMI should so inform the Court so that it may consider whether adjustments are necessary.

billed for work performed by legal technology and media specialists ($63,962.80). After deducting these amounts, the adjusted lodestar is $711,051.32. The Court also finds that SMI's attorneys exercised billing judgment.

## G. Reasonableness of Fees/ Additional Factors

The Court next considers the additional factors (to the extent they were not already considered in the lodestar calculation) listed in *Johnson* and *Arthur Andersen* for determining the reasonableness of a fee.

### *a. time, labor, and skill required and the novelty and difficulty of the questions involved*

This case was litigated over roughly three years and included substantial discovery (including 24 depositions and 5 expert reports). The parties also filed several opposed motions, including a motion for spoliation remedy, an opposed motion for leave to amend the answer, two motions for summary judgment, a motion to reconsider order on summary judgment, and a motion to limit expert testimony. This case was tried to a jury over a two-week period. Although not especially complex or novel, the case did raise some difficult legal issues, including choice-of-law, application of the UCC to mixed goods and services contracts, and the relationship between warranty and contract claims. In addition, the case involved technical factual issues requiring expert testimony. Litigation of this matter required skilled attorneys with experience in commercial litigation.

### *b. preclusion of other employment by the lawyer*

SMI asserts that its attorneys and support staff spent a total of 2729 hours working on this case to the exclusion of doing work for other clients.

### *c. the amount involved and the results obtained*

SMI asserts that it prevailed on three different causes of action for breach of express and

implied warranties, and the mere fact that its requested fees exceed the damages award should not be decisive.  SMI contends that this factor may be considered, but a low damages award alone should not lead the district court to reduce the fee award.  *Hollowell v. Orleans Reg'l Hosp.*, 217 F.3d 379, 392 (5th Cir. 2000).  SMI argues that Texas appellate courts routinely affirm the award of fees exceeding damages.  *See Hoover v. Slovacek, LLP v. Walton*, 206 S.W.3d 557, 563 n.8 (Tex. 2006) ("it is not uncommon for courts to approve fee-shifting awards that exceed the damages recovered by the client").  SMI also points to *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993), in which the Fifth Circuit affirmed an award of $564,748 in fees with a damages award of $10,420 because plaintiff had justified its hours with detailed time sheets and expense records and the district court conducted the appropriate analysis.

S&C argues that this factor is the most important factor in determining reasonableness, that the fee should be adjusted downward to be more in line with the results obtained, and that a reasonable award would be approximately $200,000.

The Fifth Circuit discussed this issue in the diversity context in *Quanta Services, Inc. v. American Administrative Group*, 384 F. App'x 291, at *5 (5th Cir. 2008):

> While the amount of damages that a plaintiff recovers is certainly relevant to the proper award of attorney's fees, it "is only one of many factors that a court must consider when calculating an award of attorneys' fees." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 803 n.42 (5th Cir. 2006) (citation omitted).  *But see Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) (noting that the "degree of success obtained" by a prevailing plaintiff is the "most critical factor" in determining an award of attorney's fees).  Under Texas law, disproportion alone will not render an attorney fee award excessive. *See Northwinds*, 258 F.3d at 355 (citing *Gorman v. Countrywood Prop. Owners Ass'n*, 1 S.W.3d 915 (Tex. App.–Beaumont 1999, pet. denied)); *Saizan*, 448 F.3d at 803 (noting that "there is no per se proportionality rule").  Indeed, Texas appellate courts have found awards reasonable even in situations where the amount of attorney's fees far surpasses the amount of actual damages.  *See, e.g.*, *Bencon Mgmt. & Gen. Contracting, Inc. v.*

*Boyer, Inc.*, 178 S.W.3d 198, 209-10 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

*d. the nature and length of the professional relationship with the client*

Haynes & Boone has represented SMI's parent company, Commercial Metals Company, in numerous matters of the course of nearly 30 years.

*e. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered*

This case was not a contingency case and did not involve a risk factor.

SMI contends that, based on all of these factors, the lodestar should not be adjusted any further. The adjusted lodestar is $711,051.32. The Court finds that the lodestar amount is reasonable and that none of the factors, including the degree of success obtained, requires further reduction of the lodestar amount.

**H. Supplemental Request for Fees**

In its reply, SMI includes a supplemental request for fees incurred after its initial request was submitted, and seeks $24,741.60 in additional fees. Docket no. 164 at 19. SMI includes its time records and an affidavit by Jefferson attesting to their reasonableness. The Court has reviewed the time entries and has: removed entries relating to an un-filed motion to reopen and expedite discovery to obtain information on S&C's attorneys' fees (removing 7.6 hours billed by Graham, for a total of $2,584); removed 1 hour in association with preparation of an estimate of future appellate fees (removing 1 hour billed by Graham, for a total of $340); removed .5 hours billed by Grimmett to draft a motion to substitute document (for a total of $94); removed fees related to the appeal (removing .9 hours billed by Cano; .8 hours billed by Graham, and .2 hours billed by Grimmett, for a total of $687.60). The Court has further reduced Graham's hourly rate for her remaining entries from $425

to $300 as a more reasonable fee for a fifth-year associate in the community (removing $4,600).

Accordingly, the Court awards additional fees in the amount of $16,436.00.

**I. Conditional Fees for Appeal**

SMI seeks conditional appellate fees.  S&C asserts that this request should be denied and SMI

can apply for such appellate fees if and when they are incurred if SMI is successful on appeal.  SMI

replies that, although it is entitled to a conditional award, it would not object if the court granted leave

to file a supplement motion for fees if and when it prevails on appeal.  Accordingly, the Court will

not award conditional fees for appeal.  *See Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 814

(W.D. Tex. 2006).  In the interest of judicial economy, this Court will deny the request for conditional

appellate fees without prejudice to SMI requesting such fees at a later time.

**J. Online Legal Research Expenses**

SMI seeks $11,509.37 in "reasonable charges for computerized legal research" in its original

motion and an additional $401.40 in it supplemental request.  Courts have held that, if such fees are

normally charged to the client, the court may award computer-assisted research costs as part of its

attorneys' fees award.  *See, e.g.*, *Arbor Hill Concerned Citizens v. County of Albany*, 369 F.3d 91, 98

(2d Cir. 2004) (listing cases); *Camargo v. Trammell Crow Interest Co.*, 318 F. Supp. 2d 448, 451

(E.D. Tex. 2004) (listing cases and awarded fees); *In re Frazin*, 413 B.R. 378, 436 (Bkr. N.D. Tex.

2009) (allowing cost of reasonable computerized legal research as attorneys' fees under Chapter 38).

The rationale is that allowing such fees ultimately results in a lower fee award because the attorney

should be able to do the research more efficiently.  *Frazin*, 413 B.R. at 436.  S&C has not objected

to an award of these expenses as part of the fee, and the Court therefore awards them, for a total of

$11,910.77.

**Conclusion**

SMI's motion for attorneys' fees (docket no. 153) is granted in part and denied in part. SMI

is awarded attorneys' fees in the amount of $711,051.32 plus supplemental attorneys' fees in the

amount of $16,436.00, for a total of $727,487.32 and expenses in the amount of $11,910.77.

It is so ORDERED.

SIGNED this 19th day of July, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE