UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| STRUCTURAL METALS, INC., § § *Plaintiff*, § § v. § § S&C ELECTRIC COMPANY, § § *Defendant*. § | Civil Action No.  SA-09-CV-984-XR |

**ORDER**

On this date, the Court considered Plaintiff Structural Metals, Inc.'s Bill of Costs (docket no. 152), the objections thereto (docket no. 162), and the reply in support (docket no. 165).

**I. Background**

Plaintiff Structural Metals, Inc. ("SMI") sued Defendant S&C Electric Company ("S&C") in state court for breach of contract, breach of express warranty in the sale of goods, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. S&C removed the case to this Court on the basis of diversity jurisdiction. This Court held a jury trial on Plaintiff's claims in November 2012. The jury found that: (1) S&C and SMI agreed that S&C would provide an AVC system, (2) S&C did not fail to comply with the agreement, (3) S&C made and breached an express warranty to SMI, (4) S&C breached an implied warranty of merchantability, and (5) S&C breached an implied warranty of fitness for a particular purpose. The jury awarded $306,500 in breach-of-warranty damages. The Court entered judgment in favor of SMI based on the jury's verdict.

## II. Analysis

As the prevailing party, SMI seeks $61,508.29 in costs pursuant to Federal Rule of Civil Procedure 54(d). Rule 54(d) provides that costs "shall be allowed as of course to the prevailing party." A party does not have to prevail on all issues to be entitled to an award of costs. *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978). Section 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as costs under the authority found in Rule 54(d). *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004); *see also Crawford Fitting Co. v. Gibbons*, 482 U.S. 437, 441 (1987). Thus, unless otherwise authorized by statute, the types of costs that may be awarded under Federal Rule of Civil Procedure 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Id.* Section 1920 provides,

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Witness fees under § 1920(3) are governed by 28 U.S.C. § 1821.

SMI seeks $181.49 in fees for service of summons and subpoena, $37,233.59 in fees for disbursement and printing, $5,793.62 in witness fees, and $18,299.59 in fees for exemplification and the costs of making copies of materials. S&C has filed objections, arguing that private process server costs, witness and corporate representative costs unrelated to testimony, meal costs exceeding the

statutory per diem, airline change fees, rental car costs, and certain electronic discovery costs are not allowable.

**A. Fees for Service of Subpoenas**

SMI seeks an award of $181.49 for service of a subpoena on Warren Wunderlich to appear and testify at trial. This amount includes an $85 service fee, a $25 rush fee, and $71.49 for the federal witness fee and mileage. S&C objects to this, noting that the service fee and rush fee are not recoverable. S&C asserts that this cost should be reduced to $71.49. Because § 1920 contemplates reimbursement for the cost of service by the Marshal but most parties use private process servers instead, it is this Court's usual practice to permit service costs in the amount that would be charged by the Marshal. *Lear Siegler Servs v. Ensil Int'l Corp.*, Civ. A. No. SA:05-CV-679-XR, 2010 WL 2595185, at *2 (W.D. Tex. June 23, 2010) ("The undersigned Judge has a routine practice of awarding costs for private process servers, but limiting the amount to the fee charged by the Marshal, which is currently $55.00.") ; *see also HEI Res. E. OMG Joint Venture v. S. Lavon Evans, Jr.*, Civ. A. No. 5:07-CV-62, 2010 WL 536997, at *3 n.3 (S.D. Tex. Feb. 10, 2010) ("The Second, Sixth, Seventh and Eleventh Circuits also permit the taxation of private process server fees that do not exceed the fee the marshal would have charged to effectuate service."). However, SMI has agreed to a reduction in its request for costs to eliminate the private process server fee. This amount is therefore reduced to $71.49 (the Court notes that this amount, which includes the $40 witness fee and mileage, is more properly characterized as a witness fee under 28 U.S.C. § 1821 but will award it here to avoid confusion).

**B. Fees for Printed or Electronically Recorded Transcripts**

SMI seeks $37,233.59 for fees for printed or electronically recorded transcripts.

<u>1. Hearing and Trial Transcripts</u>

SMI seeks costs for four hearing transcripts and a real-time trial transcript, totaling $3,159.65. The hearing transcripts include an expedited transcript of the hearing on S&C's motion for spoliation remedy ($57.60); a transcript of the original pretrial hearing in April 2012 ($254.10); a transcript of the second pretrial hearing in October 2012 and a February 22, 2012 motions hearing (expedited) ($447.95). At each of these hearings, SMI had counsel available to take notes. The Court is unable to find that these hearing transcripts were necessarily obtained for use in the case as opposed to being obtained primarily for the convenience of counsel.[1] Accordingly, these costs are not awarded.

SMI also obtained real-time transcripts during trial November 5 through 16, 2012 at a cost of $2,400. In *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983), the Fifth Circuit court held that "[t]o award the cost of daily transcripts, the court must find that they were not obtained primarily for the convenience of the parties but were necessarily obtained for use in this case." "Necessity" is a factual finding. *Id.* The fact that a transcript was used during trial can support such a finding but does not require it. *Marmillion v. American Int'l Ins. Co.*, 381 F. App'x 421, at *9 (5th Cir. 2010).

The courts have developed standards under Section 1920(2) that focus on various factors in

---

[1] SMI has not demonstrated to the Court that these transcripts were necessary. Although they may have been used, it is not the Court's duty to look through the record to determine whether they were used or the extent to which they were used. Further, even if they were used, that fact alone does not require a finding that they were necessarily obtained for use in the case as opposed to primarily for convenience. *Marmillion v. American Int'l Ins. Co.*, 381 F. App'x 421, at *9 (5th Cir. 2010) (fact that a party used transcript to argue its motion for directed verdict would support a finding that the transcripts were necessarily obtained for use in the case, but did not compel such a finding or negate a conclusion that the transcripts were obtained primarily for the convenience of the parties).

determining whether a transcript was necessary for use in a particular case, including the length of the trial, the complexity of the issues, whether the transcript would minimize disagreement over the testimony of the witnesses, whether portions of the transcript were freely introduced in later hearings, whether the case was tried to the court or before a jury, and whether proposed findings of fact were required. Wright & Miller, Fed. Prac. & Pro. § 2677. In this case, the Court finds that daily transcripts were necessarily obtained for use in the case. This case involved seven days of trial, and numerous witnesses. SMI reasonably obtained daily transcripts for use in preparing to examine witnesses, for preparing closing arguments, and for responding to the motion for judgment as a matter of law. The daily trial transcripts were not obtained primarily for convenience. However, this Court has held that the extra cost of obtaining expedited same day and real time transcripts of the trial and hearings is not taxable unless prior court approval has been obtained. *Stoffels v. SBC Communications, Inc.*, Civ. A. No. SA:05-CV-233-XR, 2012 WL 2122191 (W.D. Tex. June 11, 2012). *Id.* at *2 (citing *Fogleman*, 920 F.2d at 286). As it did in *Stoffels*, the Court will therefore reduce this cost by 10%, for a total allowed cost of $2,160.

 2. Deposition Transcripts and Videos

SMI also seeks deposition transcript and video costs for the depositions of Warren Wunderlich, Henry Camarillo, Daniel Schacht, James Smith, Ken Bray, Wes Goodwin, William Grady, Timothy Qualheim, James Sember, Mark Seehafer, Jeff Suggs, William John Swift, Raquel Ortega, Joseph Stainton, E.P. Hamilton, III, Tommy Sing, Forest Smith, Mike Jones, Victor Donsbach, Gayland Moore, Richard Becker, Thomas Dyer, and David O'Steen, for a total of $34,073.94.

Costs related to the taking of depositions are allowed under § 1920(2) "if the materials were

necessarily obtained for use in the case." 28 U.S.C. § 1920(2); *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999). "[A] deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case.'" *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). In addition, copies of depositions are allowed if they were necessarily obtained for use in the case pursuant to § 1920(4). *Gaddis v. United States*, 381 F.3d 444, 456 (5th Cir. 2004). Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court. *Fogleman*, 920 F.2d at 285-86. Deposition costs are generally allowed if the taking of the deposition is shown to have been reasonably necessary in the light of facts known to counsel at the time it was taken. *Copper Liquor v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir. 1982).

SMI's counsel attests that "each of the deposition transcripts and videos for which SMI seeks costs were reasonably expected to be used, at the time they were taken, for trial preparation." Docket no. 152-7. S&C has not challenged any of these requested costs.

The Court finds that the deposition transcripts and copies of deposition transcripts were necessarily obtained for use in the case. Though videotape deposition costs and deposition transcripts are both recoverable costs,[2] this Court does not generally award costs for both transcripts and videos unless the videos were actually used at trial. *Stoffels v. SBC Communications, Inc.*, Civ. A. No. SA:05-CV-233-XR, 2012 WL 2122191 (W.D. Tex. June 11, 2012); *Lear Siegler Servs.*, 2010 WL 2595185, at *2 ("The Court does not generally award costs for both."); *see also HEI Res. E. OMG Joint Venture v. S. Lavon Evans*, Civ. A. No. 5:07-CV-622010 WL 536997 (S.D. Tex. Feb. 10, 2010)

---

[2] *See S&D Trading Academy, LLC v. AAFIS, Inc.*, 336 F. App'x 443 (5th Cir. 2009) (noting that the Judicial Administration and Technical Amendments Act of 2008 amended section 1920(2) to permit a judge to tax as costs fees for "electronically recorded transcripts").

("The undersigned will not allow Plaintiff to recover nearly double the costs for a deposition transcript merely for the convenience of having the deposition record in both written and electronic format.").

In addition to deposition transcripts, SMI obtained video depositions for several S&C employees and witnesses, including Timothy Qualheim, James Sember, Mark Seehafer, Jeff Suggs, Tommy Sing, Forest Smith, Mike Jones, Richard Becker, and Thomas Dyer. The Court can easily determine from the trial transcript witness lists that SMI used the video depositions of Qualheim, Sember, Suggs, Jones, Becker, and Dyer in its case in chief, and finds that the video depositions were necessarily obtained for use at trial. However, the Court is unable to determine whether SMI used the video depositions of Sing and Forest during trial without reviewing the actual testimony, which it is not obligated to do. Accordingly, the Court does not award the costs for the video depositions of these witnesses. As a result, the Court deducts $1,623.54 for these video deposition costs.

Further, the Court generally holds that copies of video depositions of a party's own witnesses who can be expected to appear live at trial are not necessarily obtained for use in the case. Because Plaintiff's witnesses Henry Camarillo, Daniel Schacht, James Smith, Ken Bray, and E.P. Hamilton would have been expected to appear at trial such that a videotape deposition would not be necessary for trial, the Court finds that SMI's copies of their video depositions were not necessarily obtained for use in the case. Thus, the Court will award only the cost of the deposition transcript for these witnesses. As a result, the Court deducts $2,376.93 for these video deposition copies.[3]

---

[3] The costs for E.P. Hamilton reflect a total of $943.43 for "one copy of the oral and video deposition" without segregating costs for the transcript and video. Similarly, the cost for Henry Camarillo's "copy of the oral and video deposition" dated September 9 is a total of $1,229.91. The Court has therefore divided these amounts in half and reduced the requested costs by $471.66 and $614.95. The Court has further reduced the amount by $375.32 for a copy of Camarillo's video deposition obtained on June 20, 2012, and $915 for the four video depositions of Camarillo, Schacht, Smith, and Bray obtained on March 4, 2011.

Further, it is this Court's routine practice to disallow deposition delivery costs and related deposition costs. The Court has identified several receipts reflecting such costs, and deducts $96.34 from the Qualheim deposition for archiving and delivery, $144.24 from the Sember deposition for archiving and delivery; $360 for litigation CDs, word index, delivery, processing and archival fee, and parking for the depositions of Seehafer and Suggs; $137 for litigation CD, word index, and delivery for the Sing deposition transcript; $137 for litigation CD, word index, and delivery for the Smith deposition transcript; $137 for litigation CD, word index, and delivery for the Jones deposition transcript; $55 for the processing and archival fee and delivery for the Jones video deposition; $137 for litigation CD, word index, and delivery for the Becker deposition transcript; $137 for litigation CD, word index, and delivery for the Dyer deposition transcript; $55 for the processing and archival fee and delivery for the Becker video deposition; $55 for the processing and archival fee and delivery for the Dyer video deposition; and $137 for litigation CD, word index, and delivery for the O'Steen deposition transcript. This amounts to a reduction of $1,587.58.

SMI's requested costs for deposition transcripts and videos are therefore reduced by a total of $5588.05, for a total award of $28,485.89.

**C. Witness Fees**

SMI seeks witness fees and travel expenses for witnesses James Smith ($89.98 for deposition), Henry Camarillo ($87.73 for deposition, $1837.10 for trial), Ken Bray ($3492.40 for trial), and E.P. Hamilton ($286.41 for trial) totaling $5,793.62. SMI contends that these amounts include a $40 per day witness fee authorized by 28 U.S.C. § 1821(b)[4] and "normal travel expenses"

---

[4] "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

pursuant to § 1821(c)(4)[5].

S&C argues that SMI may recover only costs incurred by its corporate representative, Henry Camarillo, on those days that he appeared as a witness. *See Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 586 (W.D. Tex. 2010). Henry Camarillo testified on November 5, 6, and 15, and Mr. Bray testified on November 7, and S&C contends that SMI's costs should be reduced by $1,102.46 (a reduction of $724.52 for Camarillo and $377.94 for Bray)[6]. SMI agrees to this reduction. Docket no. 165 at 1.

In addition, the Court will reduce the hotel costs to the extent they exceed the per diem rate for San Antonio in November 2012, which was $166, including $106 for lodging. *See* 28 U.S.C. § 1821(d)(1), (2) (a subsistence allowance shall be paid when an overnight stay is required but it shall not exceed the maximum per diem allowance prescribed by the Administrator of General Services for federal government employee travel). The hotel cost was $135 per night, which is $29 above the per diem rate. Therefore, the Court will reduce hotel costs by $203 ($29 times 7 nights).[7] The Court will further reduce Bray's travel expenses by $25.50 because mileage is not permitted on a rental car. *See* 28 U.S.C. § 1821(c)(2) ("A travel allowance equal to the mileage allowance which the

---

[5] "All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title."

[6] S&C argued that SMI "cannot recover witness fees, lodging and travel expenses" other than for when Camarillo and Bray were testifying at trial. The Court notes that SMI has sought the $40 witness fee only for the days that Camarillo and Bray actually testified. Therefore, the reductions relate to hotel and parking costs. The $377.94 reduction amount for Bray is the cost of two nights of hotel and parking expenses ($188.97 per day times 2). The $724.52 reduction for Camarillo is three nights hotel at $188.97 plus one night at $157.61

[7] The Court will not reduce the lodging amount for Mr. Bray on November 4, because his hotel that night was below the per diem amount. In addition, the Court will award the costs for hotel taxes and parking because, after the reduction of $29, the total amount is $159.97, which is within the total daily per diem rate that includes miscellaneous expenses. *See Lear Siegler Servs.*, 2010 WL 2595185, at *4 (reducing hotel cost to per diem amount for lodging but awarding taxes and parking because they were within the daily per diem rate for incidental expenses).

Administrator of General Services has prescribed . . . shall be paid to each witness who travels by privately owned vehicle.").

S&C also argues that meal costs exceeding the statutory per diem are not recoverable. However, although an itemized receipt that included meals was included in the supporting documentation, SMI did not include meals in its requested costs, and no reduction is warranted.

S&C further contends that $716 in airline change fees are not recoverable because § 1821(c)(1) requires that a witness utilize a common carrier at the most economical rate reasonably available and SMI does not justify the reason for this "additional, excessive fee." *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997). SMI argues that the change fees are reasonable. SMI asserts that Mr. Bray scheduled his flight well in advance of the trial date to secure a favorable rate. However, the case was re-set from November 7, 2011 to April 16, 2012. Less than a week before the trial, S&C filed a motion for continuance, and trial was again rescheduled for November 5, 2012. Accordingly, Mr. Bray was forced to change his flight and incurred change fees. The Court agrees that the airline change fees are recoverable under these circumstances.

S&C argues that the $266.67 in rental car costs are not recoverable under § 1821, citing *Scribner v. Waffle House, Inc.*, Civ. A. No. 3-91-CV-2667, 1998 WL 47640 (N.D. Tex. Feb. 2, 1998) and *Pan American Grain Mfg. Co. v. Puerto Rico Ports Authority*, 193 F.R.D. 26, 35 (D.P.R. 2000). *Scribner* held that parties to an action are not witnesses for purposes of the statute, and thus Scribner's rental car costs were not recoverable. *Scribner*, 1998 WL at *1 & n.2. *Pan American Grain* held that § 1821 "allow costs for travel to the courthouse via common carrier, but the use of a rental car for the witness' convenience during his attendance is not within the contemplation of § 1821." *Pan Am.*, 193

F.R.D. at 35. It is not clear whether S&C is arguing that the rental car costs are not recoverable because Bray was a party representative or that rental car costs are never recoverable. S&C appears to recognize that Bray was both a party representative and a witness and concedes that SMI is entitled to recover some travel expenses for Bray. However, even if Bray is a witness for purposes of the rental car, the Court finds it is not an allowable cost in these circumstances.

As SMI argues, section 1821(c)(4) includes "all normal travel expenses," and a rental car is a normal travel expense. However, Mr. Bray testified only one day (November 7), and could have economically traveled to and from the courthouse and to and from the airport by taxicab, rather than obtaining a rental car for the entire five days of his trip. It appears that he rented the car and spent the first day of his trip in New Braunfels, and drove a total of 257 miles in his rental car between November 4 and November 9. Therefore, the rental car does not appear to have been obtained for the primary purpose of or necessary to transporting Mr. Bray to and from the airport and to and from trial in his capacity as a witness. Accordingly, the Court will disallow the cost of the rental car and gas ($303.27).

The Court therefore awards $4,159.39 for witness fees and expenses.

**D. Fees for Disbursement, Exemplification, and Copies**

SMI asserts that it is entitled to costs for electronically processing documents, and seeks $18,299.59 in costs paid to third parties related to electronic processing of potential production documents, scanning, imaging, and electronically processing documents for production, and copying documents for trial. S&C argues that electronic discovery administrative costs such as those incurred in collecting, processing, and hosting documents on an electronic database are not recoverable. S&C contends that costs for printing and exemplification should not exceed $4,778.11. Specifically, S&C

argues that $13,521.48 in costs listed as "electronic processing of potential production documents," which includes "discovery services" such as processing and hosting, professional consultation, and keyword searches are not recoverable.

<u>1. Electronic Document Processing and Discovery Services</u>

SMI contends that electronic processing costs have been allowed by the Western District and are justified because they replaced the need to print or copy the documents for review, which would have cost much more. SMI asserts that it extracted 77 GB of data from its backup servers, which amounted to more than 313,000 documents. The documents were then transferred to Kroll Ontrack, where they were processed, culled, and hosted in a form in which Haynes & Boone attorneys could review them. If it had not used an electronic service provider, it would have been required to print or copy these documents for hard copy review. Further, SMI asserts that two sets of the 4,620 pages of documents that were ultimately selected for production would have to be made, which at a rate of $.15 per page would have amounted to $1,386. SMI argues that, by choosing to host and process these documents electronically, it ultimately saved costs for paper printing, exemplification, and copying because it spent $13,521.48 instead of $48,000 or more.

The 2008 amendments to § 1920(4) replaced "copies of papers" with "the costs of making copies of any materials," where the copies are necessarily obtained for use in the case. Thus, "the taxable costs of making copies are no longer limited to just paper copies." *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 806 (E.D. Tex. 2012). Since the amendments, courts have reached different conclusions regarding whether certain types of electronic discovery costs may be recovered. There is no controlling precedent from the Fifth Circuit.

SMI cites *Chenault v. Dorel Indus., Inc.*, Civ. A. No. 08-CA-354, 2010 WL 3064007, at *4

(W.D. Tex. Aug. 2, 2010), in which the prevailing defendant created an electronic database to respond to the plaintiff's discovery request. The plaintiff requested all emails relating to the ladder at issue in the case, and the defendant's search ultimately yielded an estimated 20,000 emails with attachments (approximately 800,000 pages). Although the plaintiff acknowledged that it requested the emails in discovery, it argued that the cost of the electronic database was not recoverable and the defendant could have shifted the cost of production by way of objection or by motion seeking a ruling from the court prior to production.

The court noted that the electronic production saved the cost of printing and copying the 800,000 pages, at an estimated cost of $120,000. Because the electronic data "was produced in lieu of extremely costly paper production" and the defendant was "seeking to save costs by not printing out thousands of pages of documents which would have otherwise been required in response" to discovery requests, the court found that the expense fell within the category of costs recoverable for fees and disbursements for printing. SMI also cites *Neutrino Dev. Corp. v. Sonosite, Inc.*, Civ. A. No. H-01-2482, 2007 WL 998636, at *4 (S.D. Tex. 2007), which applied the same reasoning.

S&C cites *Eolas Technologies, Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803 (E.D. Tex. July 19, 2012) and *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 169 (3d Cir. 2012).[8] In *Eolas*, the district court considered whether § 1920(4) reached several types of costs that may be generally classified as electronic discovery costs: (1) document scanning; (2) document collection; (3) document processing; (4) document hosting; and (5) conversion to TIFF. *Eolas*, 891 F. Supp. 2d at 806. It concluded that "[d]ocument scanning is essentially copying paper documents to electronic

---

[8] *See also Kellogg Brown & Root Int'l Inc. v. Altanmia Commercial Mktg.*, Civ. A. No. H-07-2684, 2009 WL 1457632 (S.D. Tex. May 26, 2009) (declining to award costs for data extraction and storage).

form" and would be a recoverable cost. *Id.* The court found that costs for document collection, processing, and hosting were not recoverable costs because § 1920(4) "is not so broad as to cover general electronic discovery costs that precede copying or scanning of materials." *Id.* The court also held that conversion to TIFF, as opposed to production in native format, was not necessary, and thus not a taxable cost. *Id.*

The *Eolas* court was persuaded by the Third Circuit's decision in *Hoosier Racing*. The Third Circuit noted that the invoices were "notable for their lack of specificity and clarity as to the services actually performed," including charges for "EDD Processing" and "Performing Searching/Filtering/Exporting" that did not specify any rationale for the activities or their results in terms of the actual production of discovery material. Based on the party's briefing, however, the Court was able to identify general categories of services, including: (1) collecting and preserving ESI; (2) processing and indexing ESI; (3) keyword searching of ESI for responsive and privileged documents; (4) converting native files to TIFF; and (5) scanning paper documents to create electronic images.

The Third Circuit agreed with several other courts that scanning of documents to create digital duplicates and conversion of native files to TIFF, the agreed-upon format for production of ESI, constitute "making copies of materials." *Hoosier Racing*, 674 F.3d at 167. However, it rejected the district court's conclusion that electronic discovery services were allowable costs. The district court had reasoned that the technical services are not the types of services that attorneys or paralegals are capable of providing and remarked that the services were the "21st Century equivalent of making copies." The Third Circuit noted that the district court did not explain how all the various services amounted to "making copies," instead "seemingly concluding that, because all the various services were necessary to the ultimate production of electronic 'copies,' the services were equivalent to one

entire act of 'making copies.'" *Id.* at 168. The Court noted that courts allowing electronic discovery costs had reasoned that professional services are necessary to the production of intelligible electronic documents and have justified the award by pointing to the efficiencies and costs savings resulting from the electronic discovery consultants.

However, the Court concluded that decisions allowing all or essentially all electronic discovery consultant charges "are untethered from the statutory mooring." *Id.* at 169. It reasoned, "Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies." *Id.* (footnote omitted). Even if extensive processing is necessary for production, "that does not mean that the services leading up to the actual production constitute 'making copies.'" *Id.* Rather, this processing was analogous to tasks that had to be performed in the pre-digital era to produce documents: locating paper files, collecting them, reviewing them, screening them, etc. Those costs had never been recoverable, and were not recoverable now because they must be performed by third party consultants with "technical expertise." *Id.* The Court further noted that courts may not award costs that Congress has not made taxable, and that equitable concerns may not be invoked to do so.

The Court is persuaded by the reasoning of *Hoosier Racing*. SMI's receipts do not provide sufficient information for the Court to determine whether any of the services can be characterized as "making copies of any materials." Thus, the Court is unable to award any of the requested fees related to electronic discovery and does not allow the $13,521.48 in requested costs for the Kroll Ontrack invoices.

2. Copying Documents for Production and Trial

S&C does not challenge the typical copying costs submitted by SMI. SMI submits three receipts for "scanning, imaging, and electronically processing documents for production": $83.10 for "heavy scanning and endorsing"; $16.22 for CD export; $508.35 for copies. S&C also does not challenge the following listed as "copying documents for trial": $2,772.38 for copies, three-ring binders, and tabs; $727.41 for 975 color copies at $.69 per copy; $6.49 for oversized black and white prints; $179.22 for 195 color copies at $.85 per copy; and $484.94 for 650 "color blowbacks" at $.69 per copy. The Court finds that the entries listed as "scanning, imaging, and electronically processing documents for production" were necessarily obtained for use in the case. With regard to the entries listed as "copying documents for trial," the $2,772.38 charge for copies appears to be for trial exhibits, and the Court finds that these copies were necessarily obtained for use in the trial.

However, the Court does not have sufficient information to determine whether the other copies, including 975 color copies ordered on November 1, 2012 and 650 color blowbacks and 195 color copies ordered on November 12 (during trial), were necessarily obtained for use in the case. Although S&C has not objected to these costs, the Court has an obligation to find that they were necessarily obtained for use in the case. Although these copies were obtained before and during trial, there is no indication what they were, or whether they were necessary or for convenience (such as including multiple copies for the convenience of the attorneys or the like). Accordingly, these costs are not allowed. The Court therefore awards $3,380.05 for copies and exemplification.

**Conclusion**

The Court awards the following costs:

$71.49      Fees of the clerk and marshal;

$2,160.00     Fees for daily trial transcript necessarily obtained for use in the case;

$28,485.89     Fees for depositions necessarily obtained for use in the case;

$4,159.39     Fees for witnesses; and

$3,380.05     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.

This amounts to a total award of costs of $38,256.82.

It is so ORDERED.

SIGNED this 19th day of July, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE